Thurman, C. J.
The special verdict is imperfectly drawn, but the facts of the case may nevertheless be ascertained from it. It appears that, on February 21,1849, Buyer made his note, or due-bill, to Wood, or order, for $100, payable one day after its date; that, on June 17,1849, Wood transferred it, without indorsement, to Bear, or Bear & Moore; of which transfer, Bear gave notice to *590, 591 Buyer the some day; that prior to the receipt of this notice, Wood bad become indebted to Buyer twenty-odd ^dollars, upon open account, and Buyer had become bound as his bail, for stay of execution upon a judgment of Flood & Landsdown, which stay had not yet expired — and had also become his surety, in a note not yet matured, to Ira Brainard ; that, subsequent to the receipt of ■said notice, and after Wood’s death, Brainard took a judgment against Buyer on said note; which judgment, and also the judgment of Flood & Landsdown, Buyer afterward, and after Wood’s ■death, discharged.
Upon these facts, and in the absence of any'finding that Wood was insolvent when he made the transfer to Bear, or Bear & Moore, the question for consideration is, whether Buyer was entitled to ¡set off, in the action below, the money paid by him in discharge •of said judgments.
It is contended that he was so entitled, and that the right was secured to him by the statute in respect to negotiable instruments (Swan’s new Stat. 575, sec. 3), and also by the well-settled principles of the law of set-off, as now administered both at law and in •equity.
The statutory provision, upon which reliance is placed, is in •these words:
“ That if any such bond, note, or bill of exchange shall be indorsed after the day on which it is made payable, and the indorsee shall institute an action thereon against the maker, drawer, or obligor, the defendant shall be allowed to set up the same defense that he might have done, had the same action been instituted in •the same name, and for the use, of the person to whom the said bond, note, or bill, was originally made payable.”
This enactment is, I suppose, a mere affirmance of a right that ■existed without it; and although this case is not within its very letter — the note not having been indorsed and the action being in the name of the payee — yet it is within its spirit, and the plaintiff is in no better position than he would be in, had the note been indorsed and the action been brought in the name of the indorsee.
*But it is a mistake to suppose that it was the design of the statute to create an unlimited right of set-off as against an •assignee; or, in other words, to allow every set-off against him ¡that would be available against the payee had the note never been *592 transferred. When an overdue or non-negotiable note is assigned, the assignee takes it subject to all the equities existing between the payee and the maker; and hence it is competent for the latter, notwithstanding the assignment, to show that it was obtained by fraud, or without consideration, or that, before he received notice of the assignment, it had been paid or otherwise discharged. So, too, he may set off any liquidated demand which he held against the payee when he first obtained information of the assignment, but not claims subsequently acquired, even though they had their origin in previous transactions.
I am aware that, by some highly respectable courts, an exception to this rule has been introduced, where the payee was insolvent when he made the assignment, and the maker was afterward compelled to pay money for him on a contract of suretyship, entered into before the assignment took place — it being considered hard and inequitable that an insolvent payee should have the p>ower, by an assignment made under such circumstances, to cast .a loss upon his own surety. Tuscumbia, Courtland and Decatur R. R. Co. v. Rhodes, 8 Ala. N. S. 206; Wathen’s Ex’r v. Chamberlin, 8 Dana, 164; Williams v. Helme et al., 1 Dev. Eq. 151.
But these decisions rest expressly upon the ground of the assignor’s insolvency; and consequently where, as in the case before us, that element is wanting, there is no room for the excejDtion to the general rule. How we should hold were that fact in this ■case, it is unnecessary to consider; but how we must hold, upon the facts that are before us, seems to us well settled.
The general principle, that, as against a bona fide assignee, there can be no set-off of demands upon the assignor acquired after notice of the assignment, and that a court of law is fully ^competent to protect the assignee, is certainly well established. Pancoast v. Ruffin, 1 Ohio, 381; Weakly v. Hall, 13 Ohio, 174.
That a mere contingent liability — not even reduced into judgment — as surety for the assignor, is not a demand upon him, would seem to be sufficiently obvious; and where nothing more exists at the date of the assignment, and the assignor is solvent, a subsequent payment of the surety, in discharge of such liability, will not give him a right of set-off as against the assignee. In Granger’s Adm’r v. Granger, 6 Ohio, 35, such a claim to set-off was rejected, even as against the administrator of an insolvent obligee; *593 and although one of the reasons given for the decision was, that to allow it “ would change the course of distribution of intestate-estates,” it is clear that the principal ground relied on was, that “ no cause of action or demand existed against the intestate at his death ; ” or, in other words, when, by operation of law, the chose in action sued on was transferred to his administrator. The court said: “ The next question propounded to us is, in a suit by an administrator, upon his intestate’s claim, can the defendant set off a demand for money paid after the death of the intestate, upon a. liability entered into by the defendant as surety for the intestate ?' Our judgment resolves the question in the negative. No cause of action or demand existed against the intestate at his death. A liability only was incurred, upon which, on the contingency of the-security being compelled to pay for the intestate, he would have a right of action for his indemnity. A bare possibility that, in a certain future contingent event, he would have a demand, is not a debt due from the intestate, and such a claim has not the mutuality required for a set-off.”
It is quite apparent that this decision not only sustains the ruling of the common pleas in the case before us, but that it goes further, and would have sustained a like ruling even had the note sued on never been transferred by Wood-. Indeed, had that been the fact, the two cases would be precisely alike.
*See, also, Ridgway v. Collins, 3 Marsh. 412; and Wathen’s Ex’r v. Chamberlin, supra.
I ought perhaps to remark, that the decisions under the bankrupt laws have very little, if any, application to this case. Those statutes have generally permitted a set-off of mutual credits, whether due or not, and have therefore administered a much broader equity than the ordinary law of set-off. But perhaps it would be found difficult, even under the bankrupt laws — were the case in bankruptcy — to sustain the defendant’s claim.
We are of the opinion that the ruling of the common pleas was correct, and that, consequently, the reversal of its judgment was-erroneous. The judgment of reversal must therefore be reversed,, and the original judgment be affirmed.